

**LAW OFFICES OF WILLIAM CAFARO**

www.cafaroesq.com

William Cafaro, Esq.
ADMITTED IN NY, CA, MD & TX

108 West 39th Street, Suite 602
New York, New York 10018
Telephone: 212.583.7400
Facsimile: 212.583.7401
Email: bcafaro@cafaroesq.com

Amit Kumar, Esq.
Associate
ADMITTED IN NY & NJ
Email: akumar@cafaroesq.com

Andrew S. Buzin, Esq.
Of Counsel
ADMITTED IN NY, FL & DC

June 14, 2017

*Via ECF*
Robert M. Levy, U.S.M.J
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, NY 11201

          Re:   *Torreblanco v. Euro Woodworking Inc., et al*
                 Case No.: 16-cv-03913

Your Honor:

      Please accept this joint request for approval of the Settlement Agreement[1] in the above Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") action. *See, Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). The fully executed Settlement and Release Agreement ("Agreement") appended as Ex. "1" is entered into between Marco Torreblanco, ("The Plaintiff"), on the one hand, and Euro Woodworking Inc., and Wolfgang Michelitsch, (hereinafter referred to as the "Defendants") on the other.

**I.    Background and Claims**

      The Plaintiff filed his complaint on July 14, 2015, seeking damages for unpaid overtime under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), together with ancillary claims for violations of the record keeping provisions, NYLL §§ 195,198.

---

[1] This letter is tendered pursuant to Rule 408 of the Federal Rules of Evidence and § 4547 of the C.P.L.R., with the express understanding that no part hereof or any document submitted herewith may be utilized for any purpose if the Agreement is not approved and litigation must go forward, nor may any of the content or any related documents be used for any purpose except to enforce the Agreement.

Re:     Torreblanco v. Euro Woodworking, Inc., *et al.*
        SDNY Case No.: 16-cv-03913


Defendants make custom wood furnisture and cabinetry, and Plaintiff did carpentry work. According to Plaintiff's best recollections, he worked Monday through Friday from 7:30AM until 6:00PM and Saturday from 7:30AM until 4:00PM from November 1, 2014 through June 17, 2016. He was paid a salary of $1,276 per week. The calculations appended to our initial disclosures were made based upon these assumptions. The defense produced checks which substantiated that the Plaintiff was substantially always paid this amount every week, but was unable to produce any records showing the number of hours he worked. In its Answers to Interrogatories, Defendants responded that Plaintiff worked only 40 hours per week on an "honor system" basis, and therefore, no overtime was owed whatsoever. The Plaintiff would have testified that he always clocked in and out, but the Defendants never produced any such records.

## II.     The Settlement Reached Between the Parties

This matter has been settled between the parties in the sum of $53,000, payable over a period of 10 months. Counsel and their respective clients appeared at a settlement conference before Magistrate Judge Viktor Pohorelsky at which this resolution was reached after very protracted and difficult negotiations. Although the damages calculations in the intital disclosures amounted to $270,280, this figure was artificially high for several reasons, as set forth below.

First, the sum claimed with the initial disclosures was based upon a "salary" calculation, which presumed that the weekly salary had been agreed upon for the first 40 hours of work, which produced an hourly rate of pay of almost $32. On the other hand, a straight "regular rate of pay ("RRP") calculation", dividing the total pay by the total number of hours worked, ($1,276 ÷ 58 hours) yielded a regular rate of pay of $22 per hour[2.] Obviously, this makes a tremendous difference in the calculation of the total damages. There is some support for the Plaintiff's position that there is a presumption that a weekly salary is intended to cover the first 40 hours per week *see*, *Yuquilema v. Manhattan's Hero Corp.*, 2014 U.S. Dist. LEXIS 120422, *14 (S.D.N.Y. Aug. 26, 2014) and *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 387 (E.D.N.Y. 2012, it is very clear that any such presumption is rebuttable, *see*, *Jiao v. Chen*, 2007 U.S. Dist. LEXIS 96480, at *51 (S.D.N.Y. Mar. 30, 2007);  See also *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 338 (S.D.N.Y. 2005) (calculating a regular rate based on Plaintiff's admitted 50 hour work week); and *Zurita v. High Definition Fitness Ctr., Inc.*, No. 13 CV 4394 (CBA)(RML), 2016 U.S. Dist. LEXIS 76074 (E.D.N.Y. June 9, 2016). While the salary calculation is a hard and fast rule under substantive New York State wage law in situations governed by the hospitality wage order, this was not a restaurant, and that particular wage order had no applicability here. It had always been the Plaintiff's claim that he was paid $22 per hour. Assuming the Plaintiff's recollection of his hours to be correct, which it presumptively would be in the complete absence of any time records produced by the Defendants, *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, (1946), reducing the 61 hours plaintiff claimed to have worked after an adjustment for the lunch break, the weekly salary salary would reflect exactly 58 hours paid at a straight time rate of

---

[2] The 61 hour work week, after allowing one half hour per day for lunch six days per week, becomes 58 hours.

Re:   Torreblanco v. Euro Woodworking, Inc., *et al.*
      SDNY Case No.: 16-cv-03913

$22 per hour. Ultimately, the "salary" versus "RRP" calculation issue could well have been decided in Defendants' favor.

Second, the calculations appended to the initial disclosures also assumed that both state and federal liquidated damages would be imposed at the rate of 100%, effectively awarding the plaintiff treble damages. This has since been disapproved by our circuit. *See*, *Muhammed Chowdhury v. Hamza Express Food Corp.*, 666 Fed. Appx. 59, 61, (2d Cir. N.Y. Dec. 7, 2016) ("The question before us is really whether, under those circumstances, the NYLL countenances the recovery of treble damages (up to 200 percent in liquidated damages in addition to any underlying wage liability). Had the New York State legislature intended to provide a cumulative liquidated damages award under the NYLL, we think it would have done so explicitly in view of the fact that double recovery is generally disfavored where another source of damages already remedies the same injury for the same purpose.") (Internal citations omitted) (summary order).

Utilizing the regular rate of pay calculation, removing the double liquidated damage component, and assuming 58 hours per week that the Plaintiff worked after his lunch break was taken to account yields the calculation shown in the spreadsheet appended hereto as Exhibit "2", totaling $63,940.66, which includes $13,500 approximation of attorney's fees and costs. Inclusive of full liquidated damages, spread of hours, prejudgment interest and the attorney's fees and costs actually expended, the agreed upon settlement is 83% of the full claim.

With respect to the release language in the Agreement, it is limited solely to wage and hour and related claims. *See*, *Lazaro-Garcia v. Sengupta Food Servs.*, 2015 U.S. Dist. LEXIS 167991 (S.D.N.Y. Dec. 15, 2015. Additionally, the Agreement contains no confidentiality or non-disparagement provisions. *See Ocasio v. Big Apple Sanitation, Inc*., 2016 U.S. Dist. LEXIS 16527 (E.D.N.Y. Feb. 9, 2016).

The parties believe that the $53,000 settlement is preferable to further litigation and will avoid subjecting both parties to the time and expense of extensive discovery and ongoing litigation. While Plaintiff's counsel was confident that they would have been able to prevail and obtain this full recovery at trial, to proceed further would only serve to run up attorney's fees and costs on both sides, and to further clutter the docket.

Each settling party is represented by experienced counsel. Plaintiff's counsel's practice focuses on employment law and Plaintiff's counsel is an attorney who handles a significant volume of FLSA cases. While the settlement is optimal, and comes very close to obtaining everything the Plaintiff claimed.

The terms and conditions of the settlement are in the best interests of the Plaintiff because he is receiving all of his recovery and obviating the risks inherent in litigation.

Re:     Torreblanco v. Euro Woodworking, Inc., *et al.*
         SDNY Case No.: 16-cv-03913

### III.    The Court Should Find the Proposed Settlement Fair and Reasonable

A FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc*., No. 11–0529–WS–B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig*., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.,* 679 F.2d 1350, 1354 (11th Cir. 1982)).

In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of the circumstances, including the following factors: (1) the Plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinsky*, *supra* at 335.

<u>*Plaintiff's Range of Possible Recovery*</u>

As indicated in the spreadsheet appended as Exhibit "2", the Plaintiff is receiving over 80% of his recovery inclusive of all claims and attorney's fees. To turn this settlement down and proceed on with litigation would serve only to run up attorney's fees, which clearly should not be done.

If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the potential outcome. *Morris v. Affinity Health Plan*, 859 F.Supp.2d 611, 620 (S.D.N.Y. 2012). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the Plaintiff…against the relief offered by the Settlement." *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012).

As indicated above, although the payment is being spread over a period of 10 months, the Plaintiff will receive all of his proceeds during this calendar year because the attorney's fees are being thrown back to the final payments. Moreover, a confession of judgment signed by the principal individual defendant with a provision for the entry of judgment in the amount of 150% of the unpaid balance affords the best security available in the totality of these circumstances.

Re:     Torreblanco v. Euro Woodworking, Inc., *et al.*
           SDNY Case No.: 16-cv-03913


*Whether the Settlement Agreement is the Product of Arm's-Length Bargaining*

A "presumption of fairness, adequacy and reasonableness may attach to a…settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted).  The Parties here not only engaged in complete paper discovery, and at an extensive and prolonged mediation, they substantially fleshed out what the testimony would have been on each side in response to the inevitable cross examination. Because the settlement involves a clear and *bona fide* wage dispute in contested litigation, which was resolved through an arm's-length settlement process, it should be granted judicial approval. Moreover, Magistrate Judge Pohorelsky, who is very experienced and who acted as the mediator at the settlement conference, advised us to indicate in the fairness submission that he believed the settlement was fair and equitable in all the circumstances.

*Possibility of Fraud or Collusion*

There is no possibility that this settlement was precipitated by reason of "overreaching" by the employer.  To the contrary, the settlement was the result of vigorous arm's-length negotiations after litigating the case thoroughly through paper discovery. The Parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation.  Moreover, because the Plaintiff was no longer in the Defendants' employ at the time of the commencement of the action, there has obviously not been any undue influence exercised upon Plaintiff in the workplace which could have precipitated this settlement.

"Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 05 CIV 10240, 2007 WL 2230177, at *4 (S.D.N.Y July 27, 2007).  Here, the settlement was reached after the Parties were able to fully evaluate the strengths and weaknesses of the claims and defenses presented in the case. At all times, negotiations took place between experienced counsel and were at arm's-length. Thus, there was no fraud or collusion between counsel and as such, the Settlement Agreement should be approved.


**IV.     Plaintiffs' Counsel is Entitled to a Reasonable Fee of One-Third of the Settlement Amount Plus the Out of Pocket Disbursements**

Although the undersigned fully recognizes the Court's prerogative to evaluate the attorneys' fee arrangement in a FLSA matter, not all courts in this circuit have read *Cheeks* to require this assessment.  *See Gutierrez v. 352 East 86th St. Rest. Inc.*, 2016 U.S. Dist. LEXIS 23967, *3 -4 n. 1 (S.D.N.Y Feb. 19, 2016) ("I do not understand the FLSA to regulate the relationship between the employee as plaintiff and his counselor to alter the freedom of contract between a client and his attorney"). Additionally, to the extent *Cheeks* did mention attorney's fees, it was in the context of an abusive attorney's fee that went as high as 43.6%, in contrast to the

Re:     Torreblanco v. Euro Woodworking, Inc., *et al.*
         SDNY Case No.: 16-cv-03913

standard one third which is requested here. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d at 206.  Nonetheless, in support of this fee request, the undersigned submits as follows:

Counsel is entitled to reasonable attorneys' fees to compensate for work in recovering withheld overtime compensation on behalf of the Plaintiff in this action. Under the retainer agreement, Plaintiff's counsel is entitled to a one third fee on the gross recovery of Seventeen Thousand Six Hundred Sixty Six and 67/100 Dollars $17,666.67), Plaintiff is also requesting the out of pocket costs and disbursements, which are $500.00, detailed in Exhibit "3", consisting of the filing fee and process service costs.

As the Court will see from Ex. "4", the undersigned expended 25.5 hours, while attorney Kumar, expended 10.8 hours, Ex. "5".  We are requesting our respective billing rates of $400.00 per hour and $250.00 per hour. *See Cajamarca v. Yerina Rest. Corp.*, 2016 U.S. Dist. LEXIS 102686 * (S.D.N.Y. Aug. 4, 2016).  "To determine the quality of representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y Jan. 31, 2007 (*citing In re Global Crossing and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)).

The undersigned graduated from Fordham University *summa cum laude* with a B.S. in Accounting in 1976.  I attended law school at the University of San Diego School of Law and graduated in 1979.  In 1979, I was admitted to the State Bar of California, and tried criminal cases there, until 1981 when I moved back to New York and was admitted to the New York State bar. Since then I have also been admitted to practice in both Texas and Maryland, and I have appeared in courts of each of those states. Beginning in 1981, I served as an Assistant District Attorney in Bronx County, trying numerous felony cases to verdict. In 1986 I established a private practice, focusing on personal injury and medical malpractice work. I am an accomplished trial attorney, having taken two jury verdicts in eight figures, and many verdicts and settlements in seven figures. In 2009, I began development of the wage and hour practice of the firm.  Since then, my office has filed over 400 individual, collective, and class actions under the Fair Labor Standards Act and New York Labor Law. . I have also qualified as class counsel pursuant to Rule 23(g), *see Chavarria v. N.Y. Airport Serv.*, 2011 U.S. Dist. LEXIS 78828, *5 (E.D.N.Y. July 20, 2011). The firm has also started a vibrant plaintiff's side employment discrimination practice.  I am a member of the New York chapter of the National Employment Lawyers Association, and I am fluent in Spanish, which facilitates communication with my clients, which was helpful in my representation of Mr. Torreblanca here.  I am requesting $400 per hour for my work on this action.  *See Mendes-Garcia v. 77 Deerhurst Corp. et al.*, No. 11-cv-02797 (PGG) (MHD), D.E. 226 (S.D.N.Y. Aug. 19, 2014) (awarding William Cafaro, Esq. a reasonable rate of $400 per hour in a FLSA collective matter with approximately 175 opt-ins); *See also Clark v. Ecolab, Inc.*, 07 Civ. 08623 (PAC), DE 101, (S.D.N.Y. Apr 27, 2010 (In 2010 awarding rates for partners between $475 to $900 per hour); *Guallpa v. N.Y. Pro Signs Inc.*, No. 11cv3133 (LGS) (FM), 2014 U.S. Dist. LEXIS 77033 (S.D.N.Y. May 27, 2014 (Approving rate of $600 per hour for a partner in a wage and hour action).

As for Amit Kumar, he has been an associate with my office since 2013.  He earned his B.B.A. with dual concentrations in Finance and Computer Information Systems, *cum laude*, from George Washington University in 2005 and his J.D from Hofstra University School of Law in

Case 1:16-cv-03913-RML Document 22 Filed 06/14/17 Page 7 of 9 PageID #: 62

**7 | P a g e**

Re:  Torreblanco v. Euro Woodworking, Inc., *et al.*
     SDNY Case No.: 16-cv-03913

2012. While in law school, he worked as a law clerk for several employment law firms of note, including Schwartz & Perry, LLP and Outten & Golden LLP. Also while in law school, he was a judicial intern for United States Magistrate Judge Ronald L. Ellis of the Southern District of New York. He was admitted to practice in the State Courts of New York and New Jersey in 2013 and later that same year was admitted to practice before the Southern and Eastern Districts of New York. Since being admitted in 2013, he has focused primarily on plaintiffs' employment matters in both wage and hour as well as discrimination matters. Further, while working at the Law Offices of William Cafaro, he has had the opportunity to second chair several successful wage and hour actions through trial and successfully tried a wage and hour action in the Southern District of New York. He has also been selected to the New York Super Lawyer's Rising Star List for the year 2017. Moreover, he is a member of the South Asian Bar Association of New York, where he sits on the Public Interest Committee as well as the National Employment Lawyers Association. His normal hourly rate is $250.00 and Plaintiff is requesting this rate for his work on this action. *See Cajamarca v. Yerina Rest. Corp.*, No. 15-cv-8244, 2016 U.S. Dist. LEXIS 102686 (S.D.N.Y Aug. 4, 2016) (awarding Amit Kumar his normal hourly rate of $250 per hour); *Mendes-Garcia v. 77 Deerhurst Corp. et al.*, No. 11-cv-02797 (PGG) (MHD), D.E. 226 (S.D.N.Y. Aug. 19, 2014 (awarding Amit Kumar, Esq. a reasonable rate of $250 per hour in a FLSA matter)

Nicholas Duran is a paralegal with the Law Offices of William Cafaro. He graduated from John Jay College of Criminal Justice, where he received a B.S. in Criminal Justice with a minor in Law in 2009. Concurrent with his attendance at John Jay College of Criminal Justice, Mr. Duran graduated from LaGuardia Community College in 2007, where is received an A.A.S degree in Paralegal Studies. Mr. Duran began working for the Law Offices of William Cafaro in 2007 and is fluent in both English and Spanish. Mr. Duran provided paralegal and translation services throughout the duration of the litigation. Mr. Duran's normal hourly rate is $125.00 and Plaintiffs are requesting same for his work on this action. *See Cajamarca v. Yerina Rest. Corp.*, No. 15-cv-8244, 2016 U.S. Dist. LEXIS 102686 (S.D.N.Y Aug. 4, 2016) (awarding Mr. Duran his normal hourly rate of $125 per hour). His timesheet, reflecting 9.7 hours, is appended as Ex. "6".

The total lodestar is $14,212, calculated as follows:

| Name | Hourly Rate | Time Billed | Total |
|---|---|---|---|
| William Cafaro | $400.00 | 25.5 | $10,200.00 |
| Amit Kumar | $250.00 | 10.8 | $2,700.00 |
| Nicholas Duran | $125.00 | 9.7 | $1,212.50 |
| | | | |
| | **TOTAL** | | $14,212.50 |

The combined lodestar is therefore $14,212.50, which, although less than the requested one third contingency fee of $17,666.67, this represents a multiplier of less than 1.3. A multiplier to the lodestar compensates for the contingent nature of counsel's representation. *See Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 U.S. Dist. LEXIS 53556, (S.D.N.Y. Apr. 16, 2012; *see also In re Platinum & Palladium Commodities Litig.*, No. 10-CV-3617, 2015 U.S. Dist. LEXIS

Re:  Torreblanco v. Euro Woodworking, Inc., *et al.*
     SDNY Case No.: 16-cv-03913

98691 (S.D.N.Y. July 7, 2015 ("Courts applying the lodestar method generally apply a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved.").

> As the Honorable William H. Pauley III, U.S.D.J stated in another wage and hour action:
>
> [t]he fact that counsel here worked on contingency clearly entitles them to some premium for the risk incurred. No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended. But unless time spent and skill displayed be used as a constant check on applications for fees there is a grave danger that the bar and bench will be brought into disrepute, and there will be prejudice to those whose substantive interests are at stake and who are unrepresented except by the very lawyers who are seeking compensation. In this Court's opinion, a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases. The plaintiffs' bar is presumably selective enough with the cases they take on to win a recovery in at least half of them. A multiplier near 2 compensates them appropriately.

*Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 438-439, (S.D.N.Y. 2014 (internal quotations and citations omitted). Given the extraordinary success in the settlement, the contingent nature of the representation and the risk of non-payment, I am requesting a multiplier on this action which is approximately 1.25.

Lastly, the Court should review the public policy considerations concerning the manner in which attorneys' fees are reviewed. While this case was not complex, the risk of continued litigation, at least in terms of the defendants' solvency, is always a risk in litigating against small businesses. Since a reasonable value of the case had already been obtained in a settlement, the only purpose of continuing would have been to build up attorneys' fees. This would forestall a resolution that could have been achieved earlier. While the undersigned would never continue with a case to build up fees beyond the point where a reasonable settlement is made, other attorneys who do wage and hour litigation very well might. Reducing attorney's fees in single plaintiff FLSA cases below one third would certainly be within the Court's discretion, but if this becomes the trend in the district, it will likely having the effect of disincentivizing early resolution of these cases. As FLSA cases have become a significant portion of the federal docket, the efficient and early resolution of these cases is in the best interests of public policy.

It is respectfully submitted that this Court should utilize the percentage method and award the requested one third attorneys' fee of $16,666.67. Alternatively, if the Court chooses to utilize the lodestar method, it is requested that a multiplier of 1.25 be utilized to approve the requested fee. Plaintiffs' counsel is also entitled to costs associated with this action, and is specifically

Re:   Torreblanco v. Euro Woodworking, Inc., *et al.*
       SDNY Case No.: 16-cv-03913

requesting approval for the initial filing fee ($400.00) and process service charges ($100.00). *See* 29 U.S.C. 216(b); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998).

### V.   Conclusion

For the reasons set forth above, the Parties jointly request the approval of the Settlement Agreement and Release appended as Ex. "1", that the Court Dismiss this action with prejudice, retaining jurisdiction for the purposes of enforecement of the said Agreement. For the reasons set forth in Point IV, *infra*, Plaintiff's counsel requests that the Court approve the attorney's requested one third contingency fee of $17,666.67 together with the out of pocket disbursements of $500.00.

Respectfully submitted,
LAW OFFICES OF WILLIAM CAFARO


  /s/ William Cafaro
By William Cafaro (WC 2730)
*Attorneys for Plaintiff*
108 West 39th Street, Suite 602
New York, New York 10018
(212) 583-7400
bcafaro@CafaroEsq.com

cc: *Via ECF*
Valerie Ferrier
Nolan Klein